[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-2475.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2475

THE STATE EX REL. CLARK *v.* DEPARTMENT OF REHABILITATION AND CORRECTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-2475.]

*Mandamus—Public-records requests—Inmate failed to show violation of Public Records Act when the requested records were not in respondent's possession—Inmate failed to show violation of Public Records Act when he was directed to submit his records request to the person from whom he could obtain the record—Writ and request for statutory damages denied.*

(No. 2024-0919—Submitted February 11, 2025—Decided July 16, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Thomas Clark, seeks a writ of mandamus and an award of statutory damages because of an alleged failure of respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), to respond to public-records requests he transmitted in May 2024. Also pending before us is Clark's motion for leave to file rebuttal evidence.

{¶ 2} We grant Clark's motion for leave to file his exhibit as rebuttal evidence but otherwise deny the motion. On the merits, we deny the writ and deny his request for an award of statutory damages because Clark has not shown that DRC failed to comply with an obligation under R.C. 149.43(B).

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} Clark is incarcerated at the Lebanon Correctional Institution ("LCI"). According to his mandamus complaint, Clark was previously incarcerated at North Central Correctional Complex ("NCCC"). This case relates to public-records requests that Clark sent by electronic kite to LCI staff in May 2024.[1]

### A. The May 27 Request

{¶ 4} On May 27, 2024, Clark sent an electronic kite to the warden's office at LCI, requesting a paper copy of his "Jpay kite logs from 2018 to present day." Clark did not seek the kites themselves but instead sought the logs of the kites he had sent during a certain period. For part of that period, Clark was incarcerated at NCCC.

{¶ 5} Ellen Myers, the warden's administrative assistant and designated public-information officer at LCI, responded electronically to Clark's request on

---

1. A kite is a form of communication between inmates and prison staff. *See State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 16; *see also State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 21 (describing the "JPay" system by which inmates and staff transmit kite communications electronically).

May 29. In her initial response, Myers informed Clark that she had requested from "Inspector S. Cole" a copy of the kite logs. Myers indicated in a subsequent response that the kite logs had "been printed without notes." Clark alleges that his request was "only partially fulfilled." Clark claims that Myers did not provide kite logs from approximately December 2018 to April 2021—the period when Clark was incarcerated at NCCC.

### B. The May 28 Request

{¶ 6} On May 28, 2024, Clark sent another public-records request by electronic kite, this time to "Mr. Billingsley." Clark asked Billingsley for a paper copy of the email he "received on 5/24/24 from the DRC regarding [Clark's] court award." "C. Wallace" responded to the request on May 29, advising Clark: "See your Unit Manager and present this question." Clark does not allege that he contacted his unit manager to ask for a paper copy of the email he sought.

### C. Clark Files this Action

{¶ 7} Clark filed this action in June 2024, alleging that DRC had failed to provide him with all records responsive to his May 2024 public-records requests. Clark seeks a writ of mandamus ordering DRC to provide him with a paper copy of the May 24, 2024 email that DRC sent to Billingsley and a paper copy of Clark's JPay "kite logs from 2018 to mid-May 2021," which was during his time confined at NCCC. He also requests an award of $2,000 in statutory damages.

{¶ 8} We granted an alternative writ, ordering the parties to file evidence and submit briefs. 2024-Ohio-3227. In addition to his evidence, merit brief, and reply brief, Clark has filed a motion for leave to file rebuttal evidence, which DRC opposes.

## II. ANALYSIS

### A. Motion for Leave to File Rebuttal Evidence

{¶ 9} Our rules permit a relator in an original action to seek leave to submit rebuttal evidence. Rule 12.06(B). Rebuttal evidence "is that given to explain, refute,

or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 1998-Ohio-293, ¶ 44.

{¶ 10} Clark attached to his motion an affidavit and an exhibit, which purports to be a kite communication between Clark and Myers. It is not clear if Clark intends his affidavit to be offered as rebuttal evidence or whether the affidavit is proffered only to authenticate his exhibit. To the extent Clark seeks to offer the affidavit as rebuttal evidence, we deny the motion. The affidavit is largely a series of arguments that resembles a reply brief and does not attest to new facts tending to refute or disprove DRC's evidence.

{¶ 11} The exhibit is a kite that Clark submitted to the warden's office on October 30, 2023, in which Clark requested paper copies of (1) a commissary-price list released on October 27 and (2) the 2023 fall/winter master chow-hall menus. Myers responded to that kite on November 6, stating that the commissary-price list "was sent to all incarcerated adults on 10/30/23 via JPAY Blast" and that Clark needed to see his unit staff or contact the commissary department for a paper copy. Myers also advised Clark to obtain the chow-hall menus from "Aramark staff."

{¶ 12} We grant Clark's motion to submit his exhibit as rebuttal evidence. Clark offers the exhibit to refute DRC's contention that he must request records solely from Myers, LCI's public-information officer. Accordingly, the exhibit is offered for a proper rebuttal purpose in this case.

### B. Mandamus

{¶ 13} Mandamus is an appropriate remedy to compel compliance with the Public Records Act, R.C. 149.43. R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, Clark must show, by clear and convincing evidence, that he has a clear legal right to the relief sought and that DRC has a clear legal duty to provide it. *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 6.

**{¶ 14}** Clark bears the burden of pleading and proving facts showing that he requested a public record in accordance with R.C. 149.43(B)(1) and that DRC did not make the record available to him. *See State ex rel. Reese v. Dept. of Rehab. & Corr. Legal Dept.*, 2022-Ohio-2105, ¶ 13. R.C. 149.43(B)(1) requires a public office to make copies of public records available to any person upon request, within a reasonable period. Because LCI is a public institution operated by DRC, a state agency, it qualifies as a "public office," *see* R.C. 149.011(A), and a failure by LCI to comply with R.C. 149.43(B)(1) would warrant the issuance of a writ of mandamus compelling DRC's compliance, *see, e.g.*, *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 6.

*1. The May 27 Request for JPay Kite Logs from NCCC*

**{¶ 15}** Clark argues that DRC failed to provide all records responsive to his May 27, 2024 public-records request because Myers did not provide JPay kite logs covering the period December 2018 to April 2021, when Clark was incarcerated at NCCC. DRC responds that Myers complied fully with Clark's May 27 request because she provided all kite logs to which she and LCI staff have access—namely, the kite logs from when Clark has been incarcerated at LCI. DRC notes that Clark did not specify in his request for the JPay kite logs that some of the logs he sought were from his time at NCCC. And in any event, Myers attests that she is not the custodian of NCCC records and does not have access to kite logs from when Clark was incarcerated there.

**{¶ 16}** "[A] public office does not have a clear legal duty to furnish records that are not in its possession or control." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 11. Clark does not dispute, as a factual matter, that JPay kite logs of inmates incarcerated at NCCC are records of NCCC and are not LCI's records. Rather, he contends in his merit brief that "[t]here's no reason why Mrs. Myers could not have reached out to DRC administrators to procure these records" for him. Indeed, Clark asserts that Myers had previously procured from NCCC a 2021 kite that Clark had

requested. But even if Myers had previously obtained for Clark a document not in LCI's possession, it does not mean that the Public Records Act required her to do so here. Myers did not have a duty to obtain for Clark records that are in NCCC's possession. *See id.*; *see also State ex rel. Gilreath v. Cuyahoga Cty. Job & Family Servs.*, 2024-Ohio-103, ¶ 28-30 (state agency had no duty to obtain emails that were created or received by another state agency); *State ex rel. Striker v. Smith*, 2011-Ohio-2878, ¶ 28 (municipal-court clerk did not have a duty to obtain and produce records that were in the possession of municipal-court judge). Accordingly, Clark has not shown entitlement to relief in mandamus as to his request for records held by NCCC.

*2. The May 28 Request for an Email from DRC*

{¶ 17} Clark directed his May 28, 2024 public-records request to Billingsley at LCI. DRC argues that Clark should have delivered that request to Myers, who is LCI's public-information officer. Because he did not do so, DRC argues that Clark has not shown a right to relief in mandamus.

{¶ 18} DRC relies on DRC Policy No. 07-ORD-02 as support for its contention that Clark knew Myers was the person to whom he should have directed his May 28 request. Under DRC Policy No. 07-ORD-02, a designated "public records coordinator" at each DRC institution is directed to (1) "manage the processing of public record requests" and (2) oversee compliance with the requirements of the policy and Ohio public-records law. DRC Policy No. 07-ORD-02, https://drc.ohio.gov/about/resource/policies-and-procedures/07-ord-offender-records (accessed May 13, 2025) [https://perma.cc/CMQ2-9MTY]. Nothing in this policy, however, *requires* an inmate to request public records exclusively from an institution's public-records coordinator. Moreover, the policy includes references to practices that "staff" should employ, which appears to contemplate that a member of an institution's staff, other than the public-records coordinator, may receive a public-records request, retrieve responsive records, and communicate with the requester

about the request. Accordingly, we reject DRC's argument that Clark's failure to direct his May 28 request to Myers is fatal to his mandamus claim.

{¶ 19} Even though he was not required to direct his May 28 request to Myers, Clark still has not shown entitlement to relief. Wallace responded to Clark's request on May 29, instructing Clark to present the request to his unit manager. Clark contends that with this response, Wallace effectively denied the request. Not so.

{¶ 20} In *State ex rel. Ware v. Dept. of Rehab. & Corr.*, a plurality of this court concluded that "a public office complies with the Public Records Act when an employee . . . of the office who is not responsible for a public record directs the requester to the proper records custodian or to where the record may be located." 2024-Ohio-1015, ¶ 33 (lead opinion); *see also id.* at ¶ 53 (DeWine, J., concurring in part and dissenting in part) ("There is nothing unreasonable or unlawful about a prison establishing a point of contact who is responsible for responding to public-information requests."); *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 9-10 (inmate failed to show violation of the Public Records Act when the recipient of his public-records request responded by telling inmate to submit his request to the public-information officer at the institution from which he sought the records).

{¶ 21} In this case, there was no denial of Clark's May 28 request, because Wallace responded to that request by referring Clark to the correct person—the unit manager—from whom Clark could obtain a copy of the requested email. Clark, however, never contacted the unit manager to seek the copy of the email. Clark has therefore not shown by clear and convincing evidence that there was a denial of his May 28 request.

## C. Statutory Damages

{¶ 22} Former R.C. 149.43(C)(2)[2] entitles a public-records requester to statutory damages if (1) he made a public-records request by one of the statutorily prescribed methods, (2) he made the request "to the public office or person responsible for the requested public records," (3) he fairly described the documents being requested, and (4) "the public office or the person responsible for public records failed to comply with an obligation" under R.C. 149.43(B). In this case, for the reasons stated above, Clark has not shown that DRC violated any duty under R.C. 149.43(B)(1). Accordingly, Clark is not entitled to statutory damages.

## III. CONCLUSION

{¶ 23} We grant Clark's motion for leave to file his exhibit as rebuttal evidence but otherwise deny the motion. On the merits, because Clark has not demonstrated his entitlement to relief in mandamus, we deny the writ and deny his request for an award of statutory damages.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 24} Relator, Thomas Clark, an incarcerated person, transmitted two public-records requests through electronic kites to two public offices at the Lebanon Correctional Institution ("LCI"). I agree with the court's judgment (1) denying a writ of mandamus compelling respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), to fulfill Clark's May 27, 2024 request for copies of his electronic-kite logs held by NCCC, (2) denying Clark an award of statutory damages related to that request, and (3) granting in part Clark's motion for leave to file rebuttal evidence.

_____

2. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 25} I part ways with the majority, however, regarding its decision to deny Clark a writ of mandamus compelling ODRC to produce a copy of the court-award email that Clark sought in his May 28, 2024 public-records request. Sergeant C. Wallace unlawfully denied that public-records request when he instructed Clark to retrieve the requested record from his unit manager. Therefore, I would order ODRC to produce the email to Clark and would award Clark statutory damages in the amount of $1,000 related to that request. Accordingly, I concur in part and dissent in part.

### Ohio's Public Records Act

{¶ 26} The language of R.C. 149.43(B)(1)[3] is straightforward: subject to an exception not applicable here, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1) sets forth when copies must be made available—"upon request." It also says to whom the request must be sent—to "a public office or person responsible for public records," *id.* And it dictates who must fulfill the request—again, "a public office or person responsible for public records," *id.*

{¶ 27} Importantly, R.C. 149.43(B)(1) uses "a"—not "the"—in the phrase "a public office or person." "A" is an indefinite article meaning "any" and applying to more than one thing. *See United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015). In contrast, the definite article "the" specifies that the object being referred to is a discrete thing. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021). Hence, R.C. 149.43(B)(1) permits a public-records requester to send his request to *any* public office or person responsible for the requested public record, and *any* public

---

3. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

office or person responsible for the requested public record who receives the request is required to fulfill it.

*Who is Responsible for Public Records*

{¶ 28} The next question is who is responsible for public records? "Responsible" means "[h]aving a duty to be in charge of something or to look after someone or something." *Black's Law Dictionary* (12th Ed. 2024). And our caselaw has frequently referred to the person responsible for public records as the "public-records custodian." *E.g.*, *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, 2024-Ohio-5677, ¶ 11, quoting *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23. So a public office or person responsible for public records, by definition, is one who looks after and keeps those records.

*Duties upon Receiving a Public-Records Request*

{¶ 29} When a request is made to a public office or person responsible for public records, Ohio's Public Records Act, R.C. 149.43, dictates certain actions that the public office—acting through its officials and employees—or the person responsible for the requested public records must take.

{¶ 30} A public office or person responsible for public records must make copies of the requested records available to the requester at cost and within a reasonable period, unless the records contain information that is exempt from production, R.C. 149.43(B)(1), the requester makes an "ambiguous or overly broad" request, R.C. 149.43(B)(2), or the public office or the person responsible for the requested public record cannot reasonably identify which records are being requested, *id.* And "[i]f a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3).

{¶ 31} What the public office or the person responsible for the requested public record cannot do is ignore a request or deny a request without explanation.

**Clark's May 28 Public-Records Request**

{¶ 32} On May 28, 2024, Clark sent an electronic kite to LCI's Block G case manager—addressed to "Mr. Billingsley"—requesting a copy of the email Billingsley received on May 24 from ODRC regarding Clark's court award. The next day, Sergeant Wallace responded to the kite by directing Clark to contact his unit manager for the email. Sergeant Wallace then closed the request, and no subsequent action was taken by anyone else at LCI to provide Clark with the requested record.

{¶ 33} The majority contends that Sergeant Wallace did not fail to comply with the Public Records Act, because he referred Clark "to the correct person." Majority opinion, ¶ 21. However, contrary to the majority, I would hold that Sergeant Wallace failed to comply with the Public Records Act when he directed Clark to another staff member at LCI—here, Clark's unit manager—to obtain the requested record. Once Sergeant Wallace chose to respond to Clark's public-records request, he was required to follow the law as outlined in R.C. 149.43(B). *See State ex rel. Teagarden v. Igwe*, 2024-Ohio-5772, ¶ 105 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 34} In his response to Clark's records request, Sergeant Wallace did not assert that there is no public record responsive to the May 28 request. Sergeant Wallace also did not claim that Clark's request was ambiguous or overly broad, nor did Sergeant Wallace state that he could not reasonably identify what public record was being requested. *See* R.C. 149.43(B)(2). And Sergeant Wallace did not assert that the requested record is exempt from production. *See* R.C. 149.43(B)(1) and (3). Therefore, Sergeant Wallace and LCI had one remaining option to comply with the requirements of the Public Records Act: make the copy of the requested public record "available to the requester at cost and within a reasonable period of time," R.C. 149.43(B)(1). But Wallace instead responded to Clark's public-records request by directing him to speak with his unit manager.

**{¶ 35}** Consequently, Clark is entitled to a writ of mandamus compelling ODRC to provide him with a copy of the court-award email. Clark is also eligible for an award of statutory damages under R.C. 149.43(C)(2) because of Sergeant Wallace's failure to comply with the requirements of R.C. 149.43(B). And because ODRC has not provided Clark with a copy of the requested email since the filing of this writ action in June 2024, Clark is entitled to statutory damages in the amount of $1,000. *See* R.C. 149.43(C)(2).

### Conclusion

**{¶ 36}** Clark transmitted two public-records requests to public offices at LCI, and ODRC properly responded to only one of them. The majority correctly denies a writ ordering ODRC to fulfill Clark's May 27 public-records request for copies of the electronic-kite logs held by NCCC and an award of statutory damages related to that request. The majority also correctly grants in part Clark's motion for leave to file rebuttal evidence. But the majority incorrectly determines that the May 28 request was properly resolved once Sergeant Wallace directed Clark to obtain a copy of the requested court-award email from his unit manager.

**{¶ 37}** Therefore, I would grant a writ ordering ODRC to produce the court-award email responsive to Clark's May 28 public-records request and would award Clark $1,000 in statutory damages related to that request. Because the court does not, I concur in part and dissent in part.

––––––––––––––––––

Thomas Clark, pro se.

Dave Yost, Attorney General, and Adam Beckler and D. Chadd McKitrick, Assistant Attorneys General, for respondent.

––––––––––––––––––